All rise. Please be seated. The next case called... Excuse me. For oral argument of U.S. Bank v. Lampley. Counsel whenever you're ready. Good morning. I'm Paula Nicken. I'm attorney for the appellant Tina Lampley. She was one of the defendants in the underlying foreclosure. We're appealing from the judgment of foreclosure in this case. Two issues. Ms. Lampley, and I did represent her at the trial court level. She was served with a foreclosure complaint. We filed a timely entry and paid the filing fee and asked for time to plead. The mortgagor, excuse me, the mortgagee noticed of the case for hearing on a case management and on that day she was sua sponte defaulted. There had been an order extending time to give her time to plead. There had been an order. Did you say had or hadn't? Had not been an order. It was filed. You had requested 21 days to plead. 21 days had come and went. They noticed a case set for, it wasn't set for judgment, but it was for either case management. Did you file something, ask them to enter it in stanter and file any pleading when you asked for the extension? No. I just filed a motion for extension of time, but it was never heard. But did you call it up? No. How was it going to get, were you expecting the other side to call it up or what? I figured it would be taken up when we went to hearing. No, I did not call it up. It was brought up, I asked for a 21-day extension time and that. It was called up by the other side about 10 days after that 21 days ran. So, no, it hadn't been acted on one way or another. Were you consulted when that date was picked? No. And there's a local rule that says you should be? Yes. And so is it, were you standing there or was your client standing there on the day of the hearing, on the default? On the default day, neither of them were there. Neither of us were there. And had you notified the court that you couldn't be there because of some other obligation? No, I think that if I remember my assessment correctly, I thought I could be there. I was in another county in the morning and I believe this was an afternoon setting. Okay. But I was not able to get back. And that's a local Second Circuit rule and I don't know of any other circuits that actually have the rule that we have. And most of the attorneys that come from other places, like Johnson Bloomberg's in Chicago, they don't know about the rule. Well, but Common Courtesy would pick a date where you know the other person can be present. I mean, so my question to you is, you were not consulted on that date? No. Okay. But you were noticed? I did get noticed about a few days before, not very long before. And did you apprise somebody that you couldn't be present? No. And so did you, because you thought you could be present. I thought I could be present. And did you let anybody know that something transpired to keep you from being present? I don't want to misstate this. I think I called in the clerk that day when I was not going to get back in Franklin County by 1.30, but I didn't make any record of that. I generally just would not do anything but call. But they were coming from Chicago, so the hearing was held. But we were not present there. And when you say we, you mean your client? Neither Tina nor I. And was your client intending to be there? No, she works, and she has to work to survive every day that she can. She usually did not come to the motions. Was it a notice for a default? Yeah. No, there was no default on file. There was no motion for default on file. The judge, it was a sui sponte default because he reviewed the motion. The time I asked for had expired, 21 days expired. It was after that, and we were given a default. So it was the court's motion to default? Yes. And did you ask the court to reconsider or file anything with respect to the default? Well, I didn't file a motion to vacate that docket entry because it was only by docket entry. But they noticed at the hearing then on June 1st for a motion, and I filed an answer and a motion for Lee to file the answer for that hearing date and did attend. They came to hearing on that day. They had filed a motion for default, a motion to point a ceiling to the officer, notice of motion. And I'm looking from the record. So anyway, they intended to proceed to a foreclosure, it appeared to me, on June 1st. We appeared, filed a motion for Lee to file an answer and an answer. But then they withdrew their motion on June 1st and did not proceed. But as I understand it, they didn't have the correct affidavits at that time? I'm not sure. But when I reviewed the record to write the brief, I found out they had not published. They did not publish this case in the newspaper. They filed with the circuit court clerk a request for publication. But our court doesn't do that. You have to arrange your own publication. So perhaps at Cook County you give it to the clerk and they publish it. I don't know. But our court didn't publish it and it didn't get done. And I didn't realize that on June 1st, but I did when I reviewed the record. So on June 1st, they withdrew their request. And nothing happened then until August 4th. Well, after June 26th, they filed the WASP mitigation affidavit. In the WASP mitigation affidavit, in 2013, the Supreme Court entered some new rules about foreclosures that the foreclosing bank has to file an affidavit that they've tried to work through the law with the homeowner. So I suspect that on June 1st, the WASP mitigation affidavit wasn't prepared and they didn't have it, so they didn't go on. But at any rate, they filed it on June 26th. On August 4th, they filed a motion to strike my answer and then noticed it up again for 9-11. Well, on 9-11, they provided a notice for 9-21-15. And it was taken up that day. It appeared that day. They struck the answer that we had filed and went on and foreclosed. Took judgment against everyone. Did your answer have the counterclaim and the affirmative defenses in it as well? Yes. It wasn't just a simple answer. It was a complete pleading. Yes. And there's such a back history here, which is not part of the record. But I represent Tina five years in Chapter 15 bankruptcy where she was attempting to save this house. And then during the course of that, got a divorce. And she was assuming the whole burden of the bankruptcy payment. So in the context of that, we had in my counterclaim, I had alleged that during this loan was in 99, the foreclosure was in 2015. And it was a double-wide manufactured home on land that they'd already long owned. And at the time it came up for foreclosure, the debt was still merely $90,000. And we had alleged and we had come in, in the counterclaim, we alleged that the forced place insurance had put on the loan many, many times when it was not needed. And that we didn't believe that the loan would be $90,000 if that was all corrected. That was one count. And was there any discussion between your client and the bank in an attempt to resolve the forced place insurance charges? Yes. There was prior to the foreclosure to no avail. How about prior to the default? Or prior to the filing of the foreclosure even? Well, it was prior to the filing of the foreclosure. The Greentree Financial, was it Greentree Financial? It was Greentree that signed the U.S. Bank. Before Greentree, there's some reference. I'm sorry. I didn't mean to speak over you. Go ahead. Well, there's some reference that there's a CONSECO, a person signed on behalf of CONSECO. So I don't know if it rejoined with them. Was it Greentree Financial that made the deducts or added the forced place insurance premiums? Yes. Were you aware of Greentree Financial's problems nationally in that regard? CONSECO's problems, yes. And yet, Greentree or a U.S. Bank that took the assignment went ahead and foreclosed anyway, knowing that these forced place insurance payments had been made? Do I understand the record correctly? I believe so because I wrote the letters. In the bankruptcy, however, was a five-year Chapter 13. That really was not an issue in the bankruptcy. We acquired that loan. We acquired a loan history after it was dismissed, and I was trying to renegotiate or have a reaffirmation or something for her. And so we had about an eight- or ten-month period there. She continued to make her payments. They would tell her they would send her payments back. But at any rate, I am aware of that because we had discussed we needed to have an account, audit the loan history, and redo all the payments and recalculate the 16-year history to really get to where we needed to be to do a counterplay. And it just didn't. We didn't get that all done and didn't get anything on file. I really, you know, for a legal argument, though, and like I said, there's a lot of back history. I apologize. It's really just not in this record. But I, you know, a foreclosure is a lawsuit just like any other lawsuit, and I really suspect that if we would be able to let Brandon leave to file our answer and countercomplaint, we'd be able to litigate this because I felt and I still feel there were some valid offenses to the judgment as it was entered into the foreclosure. There are many times that foreclosures just no one makes any payments, and they don't make any payments, and the object is to stay in the house as long as possible. But that wasn't the situation here. I think, though, moving on to the irregularities of the record and of the judgment, first of all, there was no publication. There was no jurisdiction over Timothy Lankley. He is the co-owner. The party is divorced, and, you know, in the interest of full disclosure to the court, he agreed to give his interest to Ms. Lankley, but he was still on the note mortgage, and he was not served. He would have been served by publication, except the publication didn't occur. Of course, to unknown owners and non-record claimants, they closed those people out. And then in this record, there is an affidavit. I put that in my argument in the brief. There's an affidavit by one of the U.S. Bank employees, and I believe that'll be C-193, but that there was service by publication. They actually signed an affidavit in the record that they did publish, and they didn't publish. Then this is the affidavit by CONSECO or U.S. Bank. I'll have to pull it. It was not the Angela Kay, the lady that made the financial affidavit. Right. I didn't. I've got his name here. That's okay. We'll find it. You say there's an affidavit of publication, and indeed, the record will show there was no publication. It will not. There is not. Mr. Perales was the name of the person who signed that affidavit, Oscar Perales, Vice President of Green Tree Servicing, LLC, formerly known as CONSECO Financial. But Green Tree is no longer the entity foreclosing. That's true, but he signed that affidavit in that capacity because I took it from the document. But the foreclosure was U.S. Bank as the owner of the debt. Yes. But the other problem is that it doesn't support a judgment. I think there's just jurisdiction lacking over Timothy, Lankley, and then owners of non-record claimants. But we don't get to any of that if we rule on the default issue. Right. You attempted to file your answer without leave of court three months late, basically. Yes, I did file a motion. I filed it, but I filed a motion for leave, but it was not granted and it was stricken. Well, you filed your actual answer, your complaint answer, before you filed the motion for leave, correct? I think they were the same day. I think it was a few days later, according to my notes, and I guess I could be wrong. Perhaps so. One is C-120 and the record there is 127. There's nothing between them, but it may not have been the same day. I can't say for sure, and I didn't bring that. But at the time you were late, there had still been no motion on file for default. No, true. There had been no motion on file for default? True. I thought that that was in May, there was a motion for default. Well, the default... I thought there was a May 11th motion for default filed by the plaintiff. Right, my question is, at the time of the default in March, there was no motion on file, when the court, when Ms. Fonte granted it, granted one. Yeah, it's March 23rd, where it says, the docket that you reached, Tina Lampley, is in default. Plaintiff did notice hearing a motion for judgment. No, there was no default motion on file on that day. That was two months after the complaint was filed on 112. You know, she was served probably within a couple weeks of that day. The other issue about the judgment, though, the affidavit of Angela Kay was an affidavit as to what was owed, and it was filed in April, I believe. At any rate, then the case came up for hearing, for judgment on the foreclosure in September, and her affidavit, I set those forth in the argument. The judgment, granted judgment for $93,084, but the affidavit of Angela Kay is around $80,000, so there was an increase, I believe it was around a $9,000 or $10,000 increase from the affidavit to what was granted in the judgment. And since there isn't any evidence taken on a foreclosure hearing, it's all usually done by affidavits, that affidavit that was submitted to the court did not support that judgment. They jumped from $80,000 to $93,000. Now, there is an attorney fee affidavit in addition that's included, so that was submitted in September, which would have increased the amount, but not to the amount that actually was where it went. It should have been somewhere around probably $84,000, but it went to $93,000, and there's nothing in the record to support how the bank claimed and proved to the judge that it should be a judgment for $93,000. But did the bank seek a deficiency judgment? I have a note that my note is that they did not. It does not appear to be. I don't believe we have anything further unless the court does. In a perfect world, it would have been nice if we had not. We've got an answer on file more quickly. Once we were defaulted by docket entry in a rather expedient manner, it was quite surprising to me that that would occur in that manner, but nevertheless, we continued to come to the hearings and get notice and file whatever motions and argue against this foreclosure that we could. I note that in preparing for this, there's something called reviewing the new Supreme Court rules about foreclosure, which require Supreme Court Rule 114, requiring plaintiff to file an affidavit attesting to their compliance with all available loss mitigation programs before a judgment foreclosure is entered. These all are new as of 2013, but they would have been in effect when this foreclosure occurred. In reviewing this, an article I read set up something called reeling tracks. The average time for foreclosure is 697 days. Here again, even though this is a foreclosure and there's an interest in forcing a contract between people, this is a lawsuit like any other lawsuit. To not be able to plead an answer or present any defenses in a summary nature really doesn't assess the respective issues, the positions of the parties. I believe that when they did not proceed on June 1st with their notice of hearing and with their motion for judgment, then at that point the judge had the power and could have discretionary allowed us to come on into the case and litigate the case, and we were not granted that. But even if we find well that he entered the default, it was his right and his discretion to do that, and you missed the deadline. Go ahead. Finish your sentence. Go ahead. Counsel? May I please record, counsel, my name is Rebecca Weininger, and I represent the appellee in this matter. I'd like to jump right into the questions that you asked of my opposing counsel and clear up some misunderstandings. The first is that the motion that was filed by counsel in the initial request to extend time to answer was filed on February 13th. The motion was not noticed at that time, and, in fact, it was another month later that the court even took it up. I cannot speak to whether there was a discourtesy on the part of my client in not consulting with opposing counsel regarding the timing of that particular presentment. I will note, however, that there was a humongous gap in which opposing counsel could have noticed her own motion and failed to do it. The time that she had requested in that motion had already passed by any calculus. Whether she was requesting 21 days from the filing of the motion or whether she was requesting 21 days from the time that the answer otherwise would have been due based on the date that Ms. Lampley was served personally, that time had passed. And on March 23rd, the date on which the court took up her motion, both of those times had lapsed, and the court ultimately denied the motion having not heard from opposing counsel regarding an inability to be in court on that day. My attorney had not heard from opposing counsel regarding her inability to be in court on that day. In fact, I think the reason nobody heard from her is because she intended to be there. There was no prejudice in not having consulted with her. In fact, had there been that consultation, it sounds like opposing counsel would have said that that would have been okay. She intended to be there up until the time that whatever happened in her schedule happened and she was ultimately unavailable. The options available to counsel at that time were to move to reconsider the holding from that day on her motion or to file some other relief or some other relief, and she failed to do that. In our opinion... Let me stop you one second here before we get too far. Would you agree with me that prior to entering a default on a foreclosure complaint, that certain affidavits must be on file, and that was the law in 2015? I agree with Your Honor that to enter a default in a case in which this defendant had filed an appearance, if the defendant had not filed an appearance... Regardless, in order for a bank or a lender to obtain a foreclosure, there were certain rules in effect that required the motion for default to have attached to it at least an affidavit, right? Or wrong? Wrong. Wrong. Tell me why it's wrong. Because first of all, we did not move for default on that day. But even if we had, there was no judgment of foreclosure entered. In order to get a judgment of foreclosure, those affidavits would have been required. Only one, and that was the loss mitigation affidavit. Okay. But we didn't move for that. So now we're... And that's my point. Your bank never moved for foreclosure on the date that was set for hearing by your firm, ostensibly if we take her statements as true, without notice to her, or with very short notice, right? Yes. So the court, without any motion before it, sui sponte, defaults this debtor. But you did move for default thereafter. Exactly. So the entry in the docket seems to have had no effect. The docket entry does say default. But we then moved for default, which we then moved through because we didn't have the required documents. And then we moved for a motion for summary judgment, which has an even higher standard, default being simply that the defendant has not responded and has not participated in the case. The motion for summary judgment invoked an even higher standard of truth. We did file a motion for summary judgment, and it ultimately is the summary judgment motion that was granted. So Your Honor is absolutely correct that sui sponte, the word default, appears in the ledger, but doesn't appear to have had any practical effect because nothing prohibited the defendant from continuing to actively participate in the case. And, in fact, then in September. Well, she couldn't participate with her counterclaim that alleges the false placement issue that was raised in the counterclaim. She was afraid of that fact. Which everybody in this country knew was a problem with Green Tree Financial, right? Your Honor, even if it was, that's not necessarily what was happening in this case. I understand, but my point is you say she was not prejudiced, but yet the problem was, whether it was her fault or the court's fault or whoever, she was not allowed to raise what was placed and is in the record in her counterclaim as to forced-placed insurance payments that were not given credit for. In other words, she didn't get to put that on. Even though she appeared, she couldn't raise it. That's untrue. The reason that's untrue is because she was served in February of 2014. I'm talking about what you just said about after she was placed in default. She was still allowed to come to hearings. She could have filed a motion for leave to file that answer at any time. She did not file that motion for leave until June. So from March until June, she lay dormant. She didn't try to get the default lifted. She can't benefit from having not actively participated in this case. She was given notice of everything, and she still did not participate in the case. Let me say one other thing about whether she could put that on. She was absolutely entitled to depose the applicant. We had to file an affidavit of indebtedness. She appeared in the case. She was absolutely entitled by subpoena to have deposed my client on the issue of the insurance or any other issue that follows the affidavit. How can she do that if she's already been ruled in default? She's still entitled. We moved for summary judgment. We brought that on ourselves. We filed a motion for summary judgment. We filed an affidavit of indebtedness in April. We did not move for summary judgment until September. She took no steps to participate or to court encounter the affidavit. So you're acting as if the default language that the court entered didn't mean that there was a default? I can't remember anything in the record or in anybody's conduct that shows that the default had any substantive effect practically or technically. On the plaintiff as well? Correct. Well, I just don't understand how you can say that if her pleading is stricken. Her pleading wasn't stricken, Your Honor. There was no pleading at that time. Wait, wait, wait, wait, wait, wait, wait, wait. Okay. Slow down. We speak slower in Southern Illinois. I apologize. Don't apologize. Between March and June, you had not, your client had not filed a motion for default? Incorrect. When did it file? We filed a motion for default on May 11, 2015. Okay. In June, it was called up and then withdrawn? And withdrawn. When did the court deny her or strike her pleadings? I have all the dates right here. Okay. Give me that date. The answer, I'm going to go back one date. The answer was filed on May 29 without leave. And your motion was filed May? My motion for default was filed on June 1. I'm sorry. My motion for default was filed on May 11. Right. Was filed on May 11. She filed her answer on May 19 without leave and without requesting leave. I got that. June 1st is the presentment of my motion for default. That motion is withdrawn for failure to have filed a loss mitigation affidavit. And there's no discussion on June 1 by the court as to whether or not her pleading can be filed? Correct. Or the default being set aside? Was there any hearing? All I have is a docket entry. I don't have a bystander's report. All I have is a docket entry that simply reads that the motion for default is withdrawn. So, May 11th, it's filed. May 19th, she answers and files a counterclaim. May 29th. Yes, May 29th. Okay. You said the 19th. I apologize. May 29th, she answers and files her counterclaim. And June 1, you withdraw. Correct. Your motion. On June 2nd, she files for leave to file that answer. She does not motion. She does not notice of that motion. She just files it. There's no notice. And when's the next hearing? September 21st. On August 4th. And so, you're saying that between March and June, she was not prejudiced? Correct. Why? She's in default. She wasn't kept from doing anything. She was in default. What does that mean to you legally, if somebody's in default? She was in default for not having answered the complaint. What does that mean to you legally? What does a default mean to you? Does it mean that a party can continue to participate? Well, there wasn't a judgment. Is that what you're trying to say? Correct. There's no judgment. There was only a ruling that she had failed to answer the complaint. There was a technical default, but there was no judgment entered. There was no relief awarded to my client. And at any time, she could have moved to have that docket entry. And did. And she moved it, but her problem was she moved it, but she didn't call it up. I don't have any record that she moved to vacate that default. Oh, I mean, she moved to file the answer. Right. But it wasn't denied because she was in default. I understand. It was never called up. Right. She wasn't kept from doing anything. So there was no prejudice because she wasn't kept from participating in any way in this case. In fact, she then does file an answer. So she didn't feel like she was prohibited from participating. She does file an answer. She does file for leave to file that answer after she files the answer. In fact, we didn't think that there was any practical effect because we then filed for default. We withdrew that motion because we didn't have the proper documentation, as Your Honor was alluding. And then we filed a motion for summary judgment, an even higher standard, where we have to prove all kinds of things. She could have deposed my person, my affidavit. She could have asked for leave to depose my affidavit if she felt that default was some – that one docket entry was somehow a barrier. She could have filed a counter affidavit. She was free to do any of those things. Instead, she chose not to actively participate despite having been given notice of each one of these steps. That is the problem. I'm happy to entertain any other questions about that part. I have a list of things that the Court had questions about. You've answered that for me. Thank you. Your Honor, there is an issue brought up by my esteemed colleague regarding publication. That is not anything that affects her client. She represents Tina Lampley and only Tina Lampley. She, Tina Lampley, was served personally, and she was represented by counsel. Whether there was jurisdiction against the other defendants is an issue that – She can't raise that legal? Correct. Talk to me about the amount of the judgment. Absolutely. I'd be happy to. This is getting late. I'm sorry? It's getting late, and I want to hear that, so talk to me about the amount. Let's talk about the amount of the affidavit. The amount of the affidavit differs from the amount of the judgment, and I'm not sure that I can totally confidently explain it. However, my colleague did not oppose that amount timely at the trial court. There is not a counter-affidavit. All of the allegations of my affidavit must be taken as true because there isn't a counter-affidavit, and as we've discussed, there was no deposition. So the amount of the affidavit speaks to the amount of unpaid principal and the amount of interest that is accruing. The date of the affidavit counts until sometime in March of that year, and judgment was not – It was filed in April. Judgment was not entered until September of that year, and there is a discrepancy between the amount in the affidavit and the amount in final judgment. There are two things that account for at least part of that discrepancy. The first is attorney's fees, and the second is interest continues to accrue. So even though the amount of interest memorialized on March 22nd, it says in the affidavit there's a per diem, there's about $14.50, that continues to accrue, and we're entitled to recover that amount however much is accrued, but it's until the date that judgment is entered. So those two amounts account for some of the discrepancy between the two numbers. What is the practical effect, though, of the difference? There's absolutely no practical effect, and the reason is – there's two reasons, Your Honor. The first is that there is no personal deficiency entered against the defendant. So the only thing that was entered against the defendant was our right to possess the property and to own the property, but if the difference between the two affidavits was $100,000, it still wouldn't matter because there was no personal deficiency. In fact, we specifically disavow a right to a personal deficiency in the judgment. If you'd like the number, I can give that to you. There's a second reason that that number is important, or not important, the discrepancy is not important, and that is our bid. The bid in the sale, the sheriff's sale, was significantly lower than either one of those. It's like 40-something, 45. Yeah, 48, exactly, 48, 49, and why is that important? That's important because we didn't bid total debt, and it means that it actually benefits the defendant because if you don't bid total debt, something called the special right to redeem kicks in, and for 30 days after the order approving the sale is entered, if that bid was less than total debt, which here was under either calculation, the defendant has a right to come in and pay that amount that you bid and get the property back. So that special right to redeem was not exercised 30 days after the order approving sale was entered, so the property reverted back to the bank without a personal deficiency and with no remaining lien against the property. So there is no practical effect. I know that seems to be a theme here today, but it is true nonetheless. There is no practical effect to the judgment having a different amount granted to the plaintiff than the judgment of indebtedness, than the affidavit of indebtedness. What were the other factors that accounted for the difference in amounts initially? Whether it had a practical effect or not is part of the history of the case. I'd like to know. I have no good answer for you, but it was only about $10,000. The discrepancy was only about $10,000. So the affidavit of indebtedness says that about $80,000 is owed, a little over $80,000, and the judgment ultimately is for $93,000, I believe. So we have a little less than $13,000. Part of that is the attorney's fees. Part of that is the continued accruing interest, and I'm not sure because I wasn't there. And there's nothing in the record that discusses what other amount was granted at the time that the judgment of foreclosure was entered. But I can explain at least two other things. I can't come up with a reasonable answer, Your Honor, and I apologize for what the rest of it was. That's quite all right. If it's not in the record and you don't know it, you don't know it. That's right. I have nothing to say except I don't know. Are there any other questions? Okay. I'm just going to get back very briefly to the standing issue because whether the other defendants were served or not is not something that she can argue. There's no effect on her regarding whether the other defendants were properly served or whether there was jurisdiction over them. She has no standing. In fact, the publication did happen. There is nothing in the record, but there's nothing in the record to support that it didn't happen. In fact, there is some evidence in the record that the publication did happen, and that's the affidavit that my colleague filed in support of the summary judgment that says that service was had properly and by publication. Service was had by publication. It did actually happen, and I have the certificate. It's not in the record, but there also isn't anything that's in the record that shows that they weren't served. And so the assumption by this court has to be that the court properly found and entered judgment against those parties. That's all I have to say. Thank you so much for your time. Thank you, Counsel. Counsel? I would like to say that if I had seen a certificate of publication and one had been filed to add to the record, I would not have made those three or four pages of argument, but I have no knowledge if there was ever a publication notice because it wasn't filed in the record, and the letter in the record says we're asking the clerk of Franklin County to publish. What about the issue of standing? That is difficult. I think the point is well taken that I don't represent those other clients, but I believe that the mortgage foreclosure law itself is a codified procedure that you have to do to foreclose a mortgage, and you take this step, this step, this step. It's not like a negligence lawsuit where you can plead whatever you think suits your case. There are steps that have to be taken, and I believe that all of those bases have to be covered to get a judgment foreclosure, a proper one, and they weren't. It is a difficult issue for me to argue that I have standing, but the court, the trial court lacks subject matter jurisdiction over the people in the foreclosure judgment, and that is not ever waived. I suppose they could open up that judgment at the trial court level, file a motion to have that certificate of publication put in the record and redo the judgment. I suppose that could happen if not too much time has went by, but in the record that we have, there is no jurisdiction over those people, and I think the foreclosure law requires that, and this judgment has written. It can't stand for that reason. Well, the court on its own motion can determine whether there is subject matter jurisdiction, whether you have standing or not. If you either have subject matter jurisdiction or you don't, and we can look at that independently and determine that. I believe so. Well, that, I think, is the law. Yes. Okay, so what you're saying is there's no subject matter jurisdiction over the other parties, and so the judgment itself is void. Is void. There's no subject matter jurisdiction. I'm only laughing because void and voidable, that seems to be kind of a big issue here. Right. In this state. I also disagree that that docket entry, finding my client in default on a sui sponte basis had no practical effect. It did have a practical effect on us. We couldn't struggle with what to do, yet we were noticed to come to court, and we were able to come to court and argue and take positions. But the motion for leave to file, you know, was filed, and it asked for leave and have let the answer stand, and they affirmed that it did stand, and that was stricken. And on the same day it was stricken, the report of objections was entered. Excuse me. You say it did have an effect precluding you from going further. However, you did file motions to file an answer. I did, but it didn't have a chilling effect at the beginning, I will tell you, because I just struggled with what to do with it for a bit. But when they said it had a practical effect. Four months later you attempted to file an answer. Well, it was March 23rd to June 1st, around June, early June, so it was actually two months, closer to two months. But I think as a whole this judgment can't stand for various reasons. The affidavits are not proper. The affidavits are public. You know, I don't know. They say there's a publication notice that did make it in the record. I just would like to see that, but I haven't ever seen it, so I have to assume that there is none. The affidavits. Well, in order for the court to review its own jurisdiction, wouldn't it have to be in the record? Yes. I mean, it's a required element. It is. Of the foreclosure. You have to have jurisdiction over all parties known and unknown. And he was definitely known. Jim Lankley. Yeah. Yeah. Now the assignment that was made during the bankruptcy, do you think that that has any effect on the jurisdiction issue? You mean the? He gave it to his interest to her. I think that's what you told us. Maybe I misunderstood. He did. They divorced when the bankruptcy was going on. Is that in the record? No. Perhaps in my pleading that was stricken, but no other place. Okay. So as far as the record goes, he would still remain an individual who had interest in the title. On the mortgage. On the mortgage. Well, yes, it is still the whole into the mortgage. Okay. Thank you. Thank you, Counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. Despite what the clock says, this finishes the morning, Dr. We will take a recess and resume court at quarter to two. All rise.